IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

Plaintiff,

v.                                             Case No. 25-mj-148-amb

CHRISTIAN ERAZO VALDEZ,

Defendant.

**GOVERNMENT'S OPPOSITION TO THE DEFENDANT'S MOTION TO DISMISS**

The defendant, Christian Erazo Valdez, moves to dismiss the one count information against him, alleging that he unlawfully voted in a federal election as a noncitizen[1] in violation of 18 U.S.C. § 611. The defendant argues that the statute constitutes a federal voter qualification and therefore exceeds Congress's enumerated powers. But the defendant's argument suffers from a fundamental misunderstanding of the statute's purpose. It is not a qualification to vote, but rather a criminal immigration sanction. Because Congress enjoys "broad, undoubted power over the subject of immigration and the status of aliens," the statute is a permissible exercise of that power, and the defendant's motion should be denied. *Arizona v. United States*, 567 U.S. 387, 394 (2012); *see also* U.S. Const. art. I, § 8, cl. 4.

---

[1] As in the relevant statutes and caselaw, the terms noncitizen and alien are used interchangeably.

# STATEMENT OF FACTS

The government agrees with the defendant that the facts of this case are relatively straightforward. The defendant, a citizen of Ecuador, voted in the November 2024 presidential election. The defendant did so despite not being a citizen of the United States in violation of both federal and Wisconsin law. During an interview with a United States Citizenship and Immigration Services officer in January 2025, the defendant admitted that he voted in the November 2024 election. Investigators later obtained voting records that confirmed the defendant unlawfully voted.

In October 2025, the government charged the defendant via a criminal information with unlawful voting as a noncitizen in violation of 18 U.S.C. § 611. (Dkt. 2). In March 2026, the defendant filed a motion to dismiss the case, arguing that § 611 is unconstitutional. (Dkt. 20). In essence, the defendant claims that Congress lacks the power to ban noncitizens from voting. To support his position, the defendant argues that the Elections clause, Voter Qualifications clauses, and Suffrage Amendments do not empower Congress to ban noncitizens from voting. (Dkt. 20, at 2-10). But none of those provisions are the relevant authority authorizing the law. As outlined below, the noncitizen voting ban is rooted in Congress's power to regulate immigration, an area in which it enjoys broad plenary power. Section 611 is plainly constitutional and the defendant's motion should be denied.

**ARGUMENT**

I.     THE NONCITIZEN VOTING BAN IS CONSTITUTIONAL AS A VALID EXERCISE OF CONGRESS'S PLENARY POWER OVER IMMIGRATION

The constitution vests Congress with the "broad, undoubted power over the subject of immigration and the status of aliens." *Arizona*, 567 U.S. at 394; *see also* U.S. Const. art. I, § 8, cl. 4. "[O]ver no conceivable subject is the legislative power of Congress more complete than it is over the admission of aliens." *Fiallo v. Bell*, 430 U.S. 787, 792 (1977) (citation omitted). Regarding naturalization, it enjoys the "plenary power to make rules for the admission of aliens and to exclude those who possess those characteristics which Congress has forbidden." *Boutilier v. Immigr. & Naturalization Serv.*, 387 U.S. 118, 123 (1967); *see also Galvan v. Press*, 347 U.S. 522, 531 (1954) ("Policies pertaining to the entry of aliens and their right to remain here are peculiarly concerned with the political conduct of government. . . . But that the formulation of these policies is entrusted exclusively to Congress has become about as firmly imbedded in the legislative and judicial tissues of our body politic as any aspect of our government."). That plenary power includes the authority to proscribe conduct of noncitizens living in the United States (like voting) and punish non-compliance with criminal penalties. *See City of Chicago v. Shalala*, 189 F.3d 598, 604-05 (7th Cir. 1999) (upholding federal law denying welfare benefits to noncitizens); *see also* 18 U.S.C. § 1015(e) (which criminalizes falsely claiming US citizenship to obtain state or federal benefits).

In his motion, the defendant repeatedly mischaracterizes 18 U.S.C. § 611 as a voter qualification that infringes on state authority. However, as the legislative history

makes clear, the statute is not a voter qualification but rather an immigration law.

Congress passed the noncitizen ban on voting as part of the "Illegal Immigration

Reform and Immigrant Responsibility Act of 1996." P.L 104-208, Div. C, Title II, § 216,

Sept. 30, 1996. As the title suggests, the act was a comprehensive effort to:

> improve deterrence of illegal immigration to the United States by increasing border patrol and investigative personnel, by increasing penalties for alien smuggling and for document fraud, by reforming exclusion and deportation law and procedures, by improving the verification system for the eligibility for employment, and through other measures, to reform the legal immigration system and facilitate legal entries into the United States

H.R. Rep. No. 104-828 (1996) (Conf. Rep.).

The legislative history could not be clearer that Congress exercised its power

over immigration when it passed the comprehensive law. In fact, when introducing the

noncitizen voting ban specifically, Senator Alan Simpson argued that Congress's power

to regulate immigration justified the voting ban's constitutionality. 142 Cong. Rec.

S4018-19 (1996) (statement of Sen. Simpson).[2] To effectuate the Act's immigration

purpose, it also included a provision making any alien who unlawfully voted both

"inadmissible" and "deportable." P.L. 104-208, Div. C, Title III, § 347, Sept. 30, 1996.

And in fact, the Act has been used to deport aliens who have unlawfully voted. *See*

---

[2] "A doubt has been expressed about whether Congress has the authority to prohibit voting by aliens. I believe that view is unfounded. There are several constitutional grounds for this authority, including the plenary power of Congress over immigration matters…So, obviously, enforcing the immigration laws of the United States and, in particular, the naturalization laws-- the requirements and procedures an alien must follow to become a naturalized U.S. citizen is a legitimate Federal Government purpose….So the prohibition of voting by aliens in Federal elections only would clearly be rationally related to a purpose encouraging naturalization" *Id.* at S4019.

*Fitzpatrick v. Sessions*, 847 F.3d 913 (7th Cir. 2017) (upholding alien's removal based on a conviction for unlawful voting in violation of § 611). Since the noncitizen voting ban was enacted pursuant to Congress's plenary power over immigration, it does not exceed Congress's constitutional authority.

It is also immaterial that the noncitizen voting ban implicates otherwise lawful activity because "[i]n the exercise of its broad power over naturalization and immigration, Congress regularly, and lawfully, makes rules that would be unacceptable if applied to citizens." *See Demore v. Kim*, 538 U.S. 510, 521-22 (2003) (citation omitted); *see also United States v. Carbajal-Flores*, 143 F.4th 877 (7th Cir. 2025), *cert. denied*, 146 S.Ct. 826 (2025) (upholding a statute prohibiting noncitizens from possessing firearms). Likewise, regardless of whether a federal voting restriction could constitutionally be applied to citizens, Congress can prohibit that behavior for aliens using its plenary power over immigration. Therefore, § 611 is a valid exercise of Congressional authority and the defendant's motion should be denied.

II.     NONE OF THE REMAINING CONSTITUTIONAL PROVISIONS CITED BY THE DEFENDANT PROHIBIT CONGRESS FROM PASSING A VOTING REGULATION UNDER ITS ENUMERATED IMMIGRATION POWERS

The defendant's motion is almost entirely focused on arguments that the Voter Qualifications Clauses, the Elections Clause, and the Suffrage Amendments[3] do not give

---

[3] The defendant's motion refers to the 14th (equal protection), 15th (banning racial discrimination in voting), 19th (banning sex discrimination in voting), 24th (abolition of poll tax) and 26th (voter age) amendments collectively as the Suffrage Amendments. Since by its text, section one of the 14th amendment only applies to state laws, it is inapplicable here. While the remaining Suffrage Amendments restrict federal authority to pass discriminatory voting laws, none of the restrictions are implicated in this case.

Congress authority to ban voting by noncitizens. However, because none of these provisions are the actual authority Congress relied on when passing the statute, these arguments are largely irrelevant. Additionally, even if the Voter Qualifications Clauses, the Elections Clause, and the Suffrage Amendments did not give Congress authority to ban voting by noncitizens, the converse is also true. None of these provisions restrict Congress from passing such a ban if authorized under another enumerated power.[4] Since as outlined above, Congress lawfully passed § 611 pursuant to its plenary power over immigration, it is constitutional. This Court should therefore decline the defendant's invitation to address whether the Voter Qualifications Clauses, Elections Clause, or Suffrage Amendments provide Congress with the power to ban noncitizen voting. *Escambia Cnty. v. McMillan*, 466 U.S. 48, 51 (1984) (federal courts should "not decide a constitutional question if there is some other ground upon which to dispose of the case.").

In his motion, the defendant also claims that § 611 "usurps powers granted exclusively to the States" by the Voter Qualification Clauses. (Dkt. 20, at 11). In the defendant's view, the statute violates the states' constitutional grant of power and is thus unlawful. But it is important to evaluate the clauses in light of their history. *Wesberry v. Sanders*, 376 U.S. 1, 17 (1964). When drafting the Constitution, the Founders

---

[4] In fact, the Suffrage Amendments arguably contemplated Congress passing laws that implicate voter eligibility. The 15th, 19th, 24th, and 26th amendments all explicitly prohibit discriminatory state *and federal* voter qualifications. Of course, if the defendant is correct that the Voter Qualification clauses already restricted Congress from passing any laws that touched on voter qualification, then it would not have been necessary for each amendment to plainly apply to federal statutes.

grappled with the inherent tension in a system with dual federalism. On one hand, there was a concern that states would refuse to ratify the Constitution without the ability to set voter qualifications. Joseph Story, Commentaries on the Constitution of the United States 216, 218-19 (abridged ed. 1833); *see also* The Federalist 52, at 323 ("To have reduced the different qualifications in the different States to one uniform rule, would probably have been as dissatisfactory to some of the States as it would have been difficult to the convention."). On the other hand, the Framers were concerned about leaving Congress at the mercy of state governments:

> The definition of the right of suffrage is very justly regarded as a fundamental article of republican government. It was incumbent on the convention, therefore, to define and establish this right in the Constitution. To have left it open for the occasional regulation of the Congress, would have been improper for the reason just mentioned. To have submitted it to the legislative discretion of the States, would have been improper for the same reason; and for the additional reason that it would have rendered too dependent on the State governments that branch of the federal government which ought to be dependent on the people alone.

The Federalist No. 52, p. 323

The resulting voter qualification clause was "the best that lay within their option." *Id.* As the text of the clause makes clear, it imposes both a grant and limitation of power on states. U.S. Const. art. I, § 2, cl. 1 ("The House of Representatives shall be composed of Members chosen every second Year by the People of the several States, and the Electors in each State shall have the Qualifications requisite for Electors of the

most numerous Branch of the State Legislature.").[5] On one hand, the Voter Qualification Clauses indirectly allow states to establish who can vote in Congressional elections "by tying the federal franchise to the state franchise." *Arizona v. Inter Tribal Council of Arizona, Inc.*, 570 U.S. 1, 17 (2013). But they also significantly limit state power by restricting a state's authority to impose more stringent qualifications for voters in their own state legislative elections. Put differently, the clauses are not a grant of power to states to dictate whatever federal voter qualifications they desire. Nor are they a restriction on Congress from legislating tangentially to the area of voter qualifications. At best, the clauses prohibit Congress from passing voting restrictions that <u>exceed</u> a state's restrictions. But the defendant asks the Court to go much further and strike down a law that in no way imposes an additional voter qualification.

Here, there is no tension because Wisconsin's voter qualification law and § 611 operate in concert, not conflict. Wisconsin does not allow noncitizens to vote in <u>any</u> election. *See* Wis. Stat. § 6.02; *see also* Wis. Const. Art. III, § 1. The Voter Qualification Clauses empower Wisconsin to determine that only citizens can vote. And concurrently, its plenary powers empower Congress to criminalize the associated behavior, voting in a federal election by an alien. Section 611 does not infringe on Wisconsin's power to establish voting qualifications in any way. It simply mirrors the requirement that Wisconsin (and every other state) has. There may one day be thorny questions of federalism where a state's voter qualifications and a federal law conflict, but that day is

---

[5] The relevant language in the later passed 17th Amendment (direct election of senators) is almost identical. Collectively, both are referred to as the Voter Qualification Clauses.

not today. *See City of L.A. v. Patel*, 576 U.S. 409, 415 (2015) (a facial challenge to the constitutionality of a statute cannot succeed unless the statute is unconstitutional in all applications). Under the present circumstances, the Court should not invalidate § 611, and the defendant's motion should be denied.

## CONCLUSION

For these reasons, the government respectfully requests that the defendant's motion be denied.

Dated this 20th day of April, 2026.

Respectfully submitted,

CHADWICK M. ELGERSMA
United States Attorney

By: /s/
WILLIAM M. LEVINS
Assistant United States Attorney
222 West Washington Ave., Suite 700
Madison, Wisconsin 53703
(608) 264-5158
William.levins@usdoj.gov

9